DISTRICT OF COLUMBIA, Petitioner,
v.
Fenton M. FADELEY, Respondent.

DISTRICT OF COLUMBIA, Petitioner,
v.
Richard W. FADELEY, Respondent.

DISTRICT OF COLUMBIA, Petitioner,
v.
F. Mercer FADELEY, Respondent.

DISTRICT OF COLUMBIA, Petitioner,
v.
Fenton M. FADELEY, Respondent.

DISTRICT OF COLUMBIA, Petitioner,
v.
Patrick A. DECK, Respondent.

DISTRICT OF COLUMBIA, Petitioner,
v.
Chester A. BLINSTON, Respondent.

DISTRICT OF COLUMBIA, Petitioner,
v.
Dolores U. FADELEY, Respondent.

Nos. 12924–12926, 12978–12981.

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1956.

Decided June 7, 1956.

Mr. George F. Donnella, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and George C. Updegraff, Asst. Corp. Counsel, were on the brief, for petitioner. Mr. Hymie Nussbaum, Asst. Corp. Counsel, also entered an appearance for petitioner.

Mr. Charles T. Akre, Washington, D. C., with whom Mr. John M. Bixler, Washington, D. C., was on the brief, for respondents.

Before PRETTYMAN, DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Ellen Fadeley died in April 1953 at age 84. Her executors reported on the federal estate tax return, a copy of which was filed with the District of Columbia inheritance tax return, two inter vivos gifts of $25,000 each which were made to decedent's two grandsons in February 1952; the executors asserted these gifts were not made in contemplation of death. The District of Columbia Assessor, however, held the gifts had been made in contemplation of death [1] and assessed inheritance taxes against the two grandsons. Since decedent's will directed that succession taxes be paid out of the corpus of the estate, Fenton Fadeley, decedent's son and the residuary legatee, paid the taxes assessed against the grandsons. Fenton Fadeley and the two grandsons then filed three separate petitions in the District of Columbia Tax Court for a refund of the taxes.[2] The Tax Court granted the refund, holding that the gifts were not made in contemplation of death.

This decision was appealed by the District of Columbia in cases 12924, 12925 and 12926. These three cases involve two issues, (1) whether the residuary legatee, who paid the assessment, and the donees of the inter vivos gifts, against whom the taxes were assessed but who did not pay them, can appeal to the Tax Court from the District Assessor's determination, and (2) whether the inter vivos gifts were made in contemplation of death.

The statute concerning appeals to the Tax Court from tax assessments provides:

Any person aggrieved by any assessment by the District against him of any * * * taxes, or penalties thereon, may, within ninety days after notice of such assessment, appeal from such assessment to the board, provided such person shall first pay such tax, together with penalties and interest due thereon, to the collector of taxes of the District of Columbia. * * * (§ 47–2403, D.C.Code (Supp. III, 1951).)

Petitioner contends that the donee-grandsons cannot appeal to the Tax Court be-

1. § 47–1601(a), D.C.Code (1951), imposes inheritance taxes on gifts made in contemplation of death.

2. The taxpayers stated before the Tax Court that the three petitions were filed because it was uncertain who was entitled to bring the action.

cause they did not pay the tax and the residuary legatee cannot appeal because, although he paid the tax, the tax was not assessed against him. Since this court held in National Bank of Washington v. District of Columbia [3] that as a general rule an executor was not a "person aggrieved" for purposes of an appeal to the Tax Court, the obvious result of petitioner's argument is that in a situation where the will provides for the payment of succession taxes out of the corpus of the estate, *no one* can appeal an assessment to the Tax Court under this statute. That could not have been intended and must not be allowed. The residuary legatee has paid the tax and since the tax reduces the amount which he will receive under the will, he is the one whose "individual interests are directly and personally affected" by the assessment and is thus the "person aggrieved" by the assessment. National Bank of Washington v. District of Columbia, supra, 226 F.2d at page 761. Although the tax was technically not assessed against the residuary legatee, for all practical purposes the assessment was against him and, therefore, he can appeal under this statute.[4]

■■ On the contemplation of death issue, we believe the Tax Court's finding that the gifts to the two grandsons were based on life motives is adequately supported and there is no basis for disturbing that finding. The desire to aid the business and home-making aspirations of grandchildren is a proper life motive for such gifts as these.[5] Advanced age alone does not establish contemplation of death.

The purposes here had long been contemplated and were frustrated by the advice of the parent of the donees, one of the very persons who normally (and properly) might urge tax-saving devices. The donor's desire to make these gifts in 1945 was not carried out because Fenton Fadeley felt his sons (ages 16 and 20) were too young to have $25,000 each. The fact that the execution of the inter vivos gifts in 1952 was accompanied by a pro tanto reduction of testamentary bequests to the grandsons was a coincidence flowing from the employment of the will in 1945 to accomplish what the donor wanted to accomplish by inter vivos gifts at that time. The testamentary coloration of the gifts is, therefore, only superficial.

■ The second group of cases (12978, 12979, 12980, 12981) relates to different issues. Decedent's executors also included in the inheritance tax return decedent's interests in four partnerships, valuing these interests at $108,117.95. The partners, in addition to decedent, were Fenton Fadeley, Chester Blinston, Patrick Deck and Dolores Fadeley. Each partnership agreement provided that decedent would receive $22\frac{2}{3}\%$ of the profits of the business and this percentage could neither be increased nor decreased even though new partners were taken in or the number of partners reduced; on the death of any partner, the partner's estate would remain a partner until the end of the calendar year, at which time the deceased partner's capital account would be credited with the year's profits and the capital account would then become the property of the partner's executors; at the end of the calendar year in which decedent died the remaining partners would reform the partnership so that there would be added to each of the original partner's percentage that portion of $22\frac{2}{3}\%$ divided by the number of living original partners; Chester Blinston, Patrick Deck and Dolores Fadeley were to become partners because of services as employees (described as "invaluable" in the agreement) and because Fenton Fadeley would have less time for partnership

3. 1953, 96 U.S.App.D.C. 395, 226 F.2d 759.

4. The donee-grandsons did not pay the tax and, therefore, should not be allowed to appeal the assessment. However, petitioner was not prejudiced since the Tax Court ordered only one refund to the residuary legatee and there was no "double recovery."

5. United States v. Wells, 1931, 283 U.S. 102, 118, 51 S.Ct. 446, 75 L.Ed. 867.

management. Decedent performed no services for the partnerships.

The Assessor capitalized average partnership profits for the years 1948–1952 and determined that each of the surviving partners had received $25,896.92,[6] thus increasing to $211,705.63 the value of the partnership interests owned by decedent at her death. After paying the additional taxes so assessed, the partners sought refunds in the Tax Court.

In opening their case in the Tax Court, counsel for the partner-taxpayers stated it was their contention that if a transfer of decedent's partnership interests did occur, it occurred when the partnership agreements were drawn up and it was made for a valuable consideration.[7] This was a point not raised in the taxpayers' petitions. After the hearing, however, the Tax Court granted taxpayers' motions to amend the petitions to include this consideration argument. The court observed that the taxpayers had urged the consideration argument in the opening statement without objection by the District, the issue was discussed in their briefs, and the partnership agreements, which were the only evidence necessary to support this argument, were received in evidence without objection.

The Tax Court granted the refunds, holding that there was full consideration for the transfer of decedent's partnership interests to the taxpayers as surviving partners. The District of Columbia appealed this decision in cases 12978, 12979, 12980, and 12981.[8]

Petitioner asserts that the decedent made a transfer of her partnership interests to the surviving partners for less than full consideration in money or money's worth in that decedent gave more than she received in the bargain contracted with her partners. This argument overlooks several factors. Decedent was assured by the agreement of an income for life,[9] partly no doubt because of the very prospect that the surviving partners would succeed to her interests pursuant to the agreement. She became in a limited sense an annuitant and the other partners were underwriters who assumed certain calculated risks in making the agreement. Depending on her life span, the agreement could have worked out less favorably for the survivors than it did. Thus the case involves reciprocally restrictive agreements, like those in Bensel v. Commissioner, 1937, 36 B.T.A. 246, affirmed, 3 Cir., 1938, 100 F.2d 639, and decedent was not in the "all burdens—no benefits" position which led this court to find failure of consideration in O'Connor v. District of Columbia, 1946, 80 U.S.App. D.C. 351, 153 F.2d 225. It cannot be said that this agreement transgressed any prohibitions of the taxing statute or that it was an evasive device.

Petitioner's attack on the form of the Tax Court's findings and opinions ignores the fact that no statute or rule dictates any rigid formula for findings of fact, conclusions of law and opinions; what is desirable for one case does not fit another. "It is enough that the findings, taken together, give us 'a clear understanding of the basis of the decision'." Minnesota Mining & Manufacturing Co. v. Coe, 1941, 75 U.S.App.D.C. 131, 132, 125 F.2d 198, 199.

The decisions of the Tax Court are Affirmed.

---

6. These sums were asserted to represent decedent's interest in the "good will" of the partnerships.

7. Under § 47–1601(a), D.C.Code (1951), a transfer to take effect in possession or enjoyment after the death of the decedent is not taxable if it was made for full consideration in money or money's worth.

8. There is no support for petitioner's argument that the Tax Court could not consider points which were raised in taxpayers' opening statement and in taxpayers' brief and which were included in amended petitions. Rule 11, Rules of Procedure before the District of Columbia Tax Court, permits amendment, even after the decision, to make the pleadings conform to the evidence.

9. Decedent was the only partner whose percentage of profits could not be decreased.